JANUARY TERM, 1882, No. 3.                    MAY 17TH, 1882.

## Carroll *versus* The Pennsylvania Railroad Co.

1. In an action against a railroad company for injuries to the person, the plaintiff testified that, at about seven o'clock in the evening, he stood on the platform of the ticket office. A train was going east. He looked down the track eastward and saw no locomotive light and no train coming westward. Immediately after looking eastward he faced the other way and walked ten or fifteen feet to a pavement, intending to cross the north track and go around the caboose on the rear end of the train going eastward, on the south track. As he stepped on the north track a train coming west struck him and caused the injuries. He did not look just at this time. There was evidence that the engine of the train going west did not sound any alarm whistle or ring a bell. A witness for plaintiff testified that the west-bound train was standing in the depot, or a little below it, when the plaintiff was on the platform, and that when he got on the track he was in the light of the head-light. The above facts having been given in evidence by plaintiff, *Held*, that the Court below was right in entering a judgment of non-suit.

2. It is in vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive, and the injury received was attributable solely to his own gross carelessness.

Before SHARSWOOD, C. J. ; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Lancaster County.*

Case by Robert Carroll against the Pennsylvania Railroad Company to recover damages for injuries to the person of the plaintiff, caused by the alleged negligence of the defendant. On the trial in the court below, before LIVINGSTON, J., the plaintiff testified, *inter alia*, as follows :

" On the evening of October 11th, 1879, I went to the Pennsylvania Railroad depot, in Lancaster, to get a ticket to go home to Marietta. . . . . . It was five minutes to 7 o'clock P.M. . . . . . I came out of the ticket office or waiting-room. As I came out I saw a train passing east on the south track. . . . . . The train was running very fast ; . . . . . in my opinion about ten or twelve miles an hour. I stood on the platform, outside of the door, in front of it, some seconds, while it was passing, waiting for it to get so near past that I could get around it ; I was going around the caboose ; about the time I thought I could get around I looked down the track eastward. I saw nothing ; no locomotive light. . . . . . There were lights in the depot. At least I couldn't tell that it was a locomotive light. I saw no train coming west when I looked. Right immediately after I looked eastward I faced to the right and walked off the end of the platform. I could have heard a train coming westward, I think, if one had been coming. I heard no train coming when I started off the

[Carroll *v.* The Pennsylvania Railroad Company.]

platform. As I passed the pillar at the west end of the de-
pot there was a gentleman standing there. . . . . . I was
walking very slow at the time, thinking to pass around the
train that was going east. I made a step on the track near
the water-plug. Some one caught hold of me. I was knocked
from the rear from behind. It knocked me senseless. . . . .
I didn't hear anything come that struck me; heard no bell,
no whistle. The caboose of the train on the south track had
just passed, and I was stepping over to go by. From where
I stood on the platform at the door, to the place where I
stepped on the north track, is about twelve or fifteen feet; it
may be more. It is the width of the pavement and the
length of the platform from where I stood to the pavement.
. . . . . I walked slowly, but did not stop. I judge it did
not take me over a minute. I started up to go around the
caboose immediately after I had looked to see if there was a
train coming west. The east-going train made a good deal
of noise. I could have heard a steam-whistle or a bell if it
had been sounded on a west-bound train over that.

" My limb was amputated at the depot. . . . . . Before I
started from the door on the platform I looked and listened
about a second or two, and could not see or hear any train
coming west."

Upon cross-examination he said, *inter alia:*

" I then came out, stood on the platform of the gentle-
men's waiting-room a second or two, I suppose. . . . . . I
stood there on account of the train going east. When I
came out of the door the engine of the east-bound train was
about the middle of the depot, as near as I can tell. I can't
tell where the engine was when I started from the door. I
watched the train agoing by. . . . . . I was on the pave-
ment, or close to the pavement, as it (the caboose) passed.
When I stepped on the track, after the caboose passed, there
were no cars in front of me on either track. When I at-
tempted to cross the railroad I was going southward. . . . .
I was trying to go straight across from the pavement across
the railroad tracks; the crossing, I think; I was off the pave-
ment. . . . . . It was dusk; it was a level crossing—a grade
crossing. . . . . . I saw no train coming westward on the
north track. I didn't look for a train coming westward just
at that time. The south track was occupied by the eastward-
bound train. I saw no train on the north track. I looked
for a train on the north track when I stood on the platform.
I looked eastward; I saw no train. I saw the track; could
see it to the lower end of the depot and a little further. If
there had been a locomotive on the north track, I don't think
I could have seen it. There is a bend there. I don't think

[Carroll *v.* The Pennsylvania Railroad Company.]

it could have come westward through the depot from the saloon below the depot without my seeing it, if I looked at that time. Just as I attempted to cross the track I was struck. I was not looking for a locomotive. Just at that moment my attention was drawn to the train going east at that time to get around it. If just at that time I had looked for a locomotive I could have seen it. I was trying to get by one and was struck by the other. When I was on the pavement, and before I stepped on the track, I could have seen the locomotive if I had looked for it. When I passed from the platform till I was struck I think I was in motion all the time, walked slow, didn't stop. I walked outside the tracks. I stepped on the track right in front of the locomotive. It was not very far off when I stepped on the track. Heard no sound or bell rung at that time. I had looked and listened while on the platform, and I thought I could hear an alarm if there was one."

Upon re-examination he said, *inter alia:*

" After I looked at the east-bound train, I looked east and listened for a train, and, as soon as I had done so, I started to go across, around behind the east-bound train. I am not hard of hearing, and think I could have heard if notice had been given. . . . . . My hearing was good, and my sight was good, and my entire physical condition good; and if I had looked at the moment I put my foot on the track, I could have seen the approaching locomotive. I was looking to get around the other train though."

*Conrad Johns,* for the plaintiff, testified, *inter alia:*

" He was senseless after the engine struck him. The engine was going westward that struck him. That engine did not sound an alarm whistle or ring a bell while running through the depot. It came up very quietly. I could not hear that train because of the noise made by the train going east. I could see it, but not hear it."

Cross-examined:

" He stepped on the track right in front of the locomotive having a head-light. He was walking kind of away from it, and could not see it coming on behind. He had his back to the locomotive. He could not see without turning around. He was going a kind of along the track. If he had looked down the track at that time, he could have seen the train coming."

Re-examined:

" There was no watchman there that I saw that night. There may have been one on the south side. There was none on the north side."

*Samuel Jones,* for the plaintiff, testified, *inter alia:*

" The train that was coming west on the north track gave no alarm that I heard by whistle or bell. I cannot tell whether the engine whistled after Carroll was struck. . . . . Of course I could have heard the alarm if they had rung a bell or whistle. . . . . . I could not hear the train coming west. The other made too much noise, and it came up pretty quiet."

Cross-examined:

" When I came there I saw the head-light of the western-bound train. I took it to be standing still, I can't say whether in the depot or a little below it. This was while Carroll was standing in the depot. I. didn't see it start; didn't notice it again until it came pretty close to Carroll. It was there, with head-light burning, when Carroll was on the platform. . . . . . He then had his back to the train, not right square. He was looking at the down train. He was not looking east. If he had looked east a body would think he could have seen the approaching train. I cannot tell whether he could have seen the head-light from where he stood or not. He may have stood too far back. . . . . . I didn't hear the whistle or the bell. . . . . . The head-light showed a good deal of light. He was in the light of the head-light before he got on the track. If he had turned and looked he could have seen the head-light."

*Jerome Grubb,* for the plaintiff, testified, *inter alia:*

" That train did not whistle or ring the bell before it struck Carroll."

There was further testimony to the same effect and as to the damages.

The Court entered judgment of non-suit.

The plaintiff then took a rule to show cause why the judgment of non-suit should not be stricken off, which the Court, April 3d, 1882, discharged.

The plaintiff then took out a writ of error, assigning as error that the Court erred in not setting aside the judgment.

*J. L. Steinmetz* and *Marriott Brosius,* for plaintiff in error.

If in the summary of facts there is a single one which justifies the non-suit, it must be either that the plaintiff did not look and listen, the instant he stepped on the track, or that the engine was in sight, when he did look from the platform before starting to cross.

The legal standard is complied with, by stopping, looking, and listening, at a point sufficiently near the road to enable the traveller reasonably to assure himself that he is not in danger: Penna. R. R. Co. *v.* Ogier, 11 Casey, 60; Penna. R. R. Co. *v.* Ackerman, 24 P. F. Smith, 265; Phila. & Trenton R. R. Co. *v.* Hagan, 47 Pa. St., 244; Penna. R. R. Co. *v.* Bock,

[Carroll *v.* The Pennsylvania Railroad Company.]

12 Norris, 427; Phila. & Reading R. R. Co., *v.* Boyer, 1 Outerbridge, 91.

Whether the engine was in view at the time he looked is left in doubt by the testimony. The fact that plaintiff testified that he did not hear or see it must take the case to the jury unless there is a conclusive presumption that a man must see what is visible. Take the two propositions that he must stop and listen when he puts his foot on the track, and must see what is visible, and there can never be a recovery against a railroad company for injuries.

The presumption is that he looked and listened, and proof that he could have seen the engine will not take the case from the jury: R. R. Co. *v.* Weber, 22 P. F. Smith, 27; Same *v.* Same, 26 P. F. Smith, 157; Railroad Co. *v.* Weiss, 6 Norris, 447; Railroad Co. *v.* Hall, 11 P. F. Smith, 361.

Having looked plaintiff had a right to expect that an approaching train would give some note of warning: Railroad Co. *v.* Hagan, 11 Wr., 244; Reeves *v.* R. R. Co., 6 Casey, 454.

*H. M. North*, for defendant in error.

If he did not see the train he was negligent—he is in the same position as if he saw but took no heed.

In Shaw *v.* Jewett, 13 Reporter, 23, Folger, C. J., said: " Was the coming train so plain that he could and would have seen it if he had looked; that his not seeing it was proof that he did not look."

He was approaching a place of known danger. Had he stopped for one moment, he would have heard the noise of the approaching train. Had he used his eyes he might have seen it: P. & R. R. R. Co. *v.* Boyer, 9 W. N. C., 500, 1.

The testimony on the part of the plaintiff showed contributory negligence on his part, and therefore it was proper for the Court to enter a non-suit.

When the evidence is insufficient to warrant a finding of negligence, it is the duty of the Court to order a non-suit or to refuse to submit the question, as the case may require: Passenger R. W. Co. *v.* Boudrou, 11 Nor., 481.

Where the facts are undisputed, it is not error for the Court to withhold the evidence from the jury: Hoag *v.* L. S. & M. S. R. R. Co., 4 Nor., 293; Catawissa R. R. Co. *v.* Armstrong, 2 Smith, 282; P. & R. R. Co. *v.* Yerger, 23 Smith, 121; Goshom *v.* Smith, 8 W. N. C., 289.

If on the whole of the plaintiff's evidence, the jury would not be justified in finding a verdict against the defendant, it is the duty of the Court to order a non-suit: P. & S. R. R.

*v.* Gazzam, 8 Casey, 340; Howard Express Co. *v.* Wile, 14 Smith, 201.

Carroll was not a passenger, and therefore the duty was his to show negligence on the part of the defendant and that he was free from negligence : Baker *v.* Fehr, 10 W. N. C., 56 ; McCully *v.* Clarke, 4 Wr., 399; P. & R. R. R. Co. *v.* Hummell, 8 Wr., 375.

Carroll did not stop, look and listen immediately before attempting to cross, and he admits that if he had done so, or even looked without stopping, he could have seen the coming train. He therefore was guilty of negligence *per se,* and violated an unbending rule and could not recover: P. R. R. Co. *v.* Beale, 23 Smith, 504.

MAY 29, 1882.—PER CURIAM : The injury received by the plaintiff was attributable solely to his own gross carelessness. It is in vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive.

Judgment affirmed.