## C. P. BLIGHT v. CAMDEN ETC. R. CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 10, 1891—Decided May 27, 1891.

Where, in an action against a railroad company for negligence causing death, the undisputed testimony on the part of the plaintiff shows that the deceased was killed while attempting to cross the track in front of an approaching train which he could have seen had he looked for it, it was not error to enter a compulsory nonsuit.

Statement of Facts.

Before Paxson, C. J., Green, Clark, McCollum and Mitchell, JJ.

No. 257 January Term 1891, Sup. Ct.; court below, number and term not shown.

On August 25, 1888, " Charles P. Blight, administrator of George Leightheisel, deceased, to the use of John Leightheisel, and Mary Leightheisel, parents of deceased, and Mary Leightheisel, his sister,"* brought trespass against the Camden & Atlantic Railroad Company.   Issue.

At the trial on October 20, 1890, the plaintiff adduced testimony showing that on August 5, 1888, about five o'clock in the afternoon, George Leightheisel, the deceased, and one Charles Schad were about to cross the railroad track of defendant company at a public crossing near Chiselhurst station, New Jersey, to take a train to Philadelphia.   The railroad ran somewhat north and south.   The highway crossed it at right angles.   The station was on the west side of the track and south of the crossing.   About one hundred and fifty yards south of the crossing was a cut through which the track passed.   A heavy thunder storm broke upon the deceased and his companion as they approached the crossing from the east.   Schad testified that when they got to a point about three yards from the track, carrying umbrellas, they stopped to see if any train was approaching; that they looked south towards Atlantic City, but did not see or hear any train; that the storm was blinding, and the witness did not believe one could see more than ten yards; that as they passed upon the track an express train approached from the south, and passed the station and the crossing at the rate of sixty miles an hour, without ringing the bell or blowing the whistle.   Leightheisel was killed on the track. The testimony of other witnesses called by the plaintiff sufficiently appears in the opinion of the court.

At the close of the plaintiff's case, the court, Finletter, P. J., on motion of the defendant, entered a judgment of nonsuit, with leave, saying:

There is no doubt that in this case the defendants were neg-

---

* Observe: The narr was not printed in the paper-books, but no question seemed to be raised as to the right of the administrators to sue.   See Books v. Danville Bor., 95 Pa. 158.

Opinion of the Court.

ligent, and the only question that remains is whether the deceased was or was not negligent. The evidence is that persons could see nearly six hundred yards down the road, and it is almost impossible to conceive that any person could stop and look and listen, and then be instantly killed. This man could have seen, if he had taken the precaution which the law required, to stop and look and listen. I do not see that the evidence is at all satisfactory that it was impossible to see more than ten yards, because these people were seen at a distance of three or four hundred yards in the same storm, and were seen down to within thirty feet or ten yards of the track. But it seems to me that if the storm was so violent that they could not see, the greater the necessity to stop and to stop long enough. I am compelled in this case to enter a nonsuit.

—A rule to show cause why the judgment of nonsuit should not be taken off having been discharged, the plaintiff took this appeal, assigning the orders entering the judgment and discharging said rule, for error.

*Mr. Charles P. Blight* and *Mr. S. Morris Waln*, for the appellant.

*Mr. Edwin J. Sellers* (with him *Mr. D. W. Sellers*), for the appellee.

OPINION, MR. JUSTICE GREEN:

This is another instance in which a person stepped upon a railroad track in front of an approaching locomotive, and was instantly struck and killed. A companion of the deceased was with him at the time, and succeeded in getting across the track in time to avoid a collision. He testified that when they were approaching the track they "stopped to see whether any train was coming. Leightheisel was right alongside of me. We looked down towards Atlantic City; we could not see any train. We did not hear any whistle blown or bell rung. I then started, and ran across the track. . . . . The first I saw or heard of the train was when it startled me as it rushed by, just after I got over the track, and as it startled me I slipped and fell. . . . . I started and ran across the track. I started to run after we looked for the train, about two yards from the

track. I did not see any engine. When I started to run,
Leightheisel was right alongside of me."

It was raining violently at the time of the accident, and both
the men had umbrellas. Fry, a witness for the plaintiff, said
he first saw the men about three hundred yards up the road,
and last saw them about thirty yards from the track. Stein-
meyer, another witness for the plaintiff, said he could see about
two or three squares up the road from the station, and there
was evidence that there was a cut through which the road
passed about one hundred fifty yards from the station. The
men were crossing the track on a public road, close by the
station. There was nothing to prevent the men from seeing
the train, if they really looked for it, from the point at which
Schad, the plaintiff's principal witness, said they looked towards
Atlantic City. Steinmeyer said he could see up the road two
or three squares, and towards Waterford about two squares,
where there was an embankment. Fry said there were about
three hundred yards in a square. The accident occurred about
five o'clock on an afternoon in August. The clouds were
heavy and dark, and the rain fell in torrents. In these cir-
cumstances, the men undertook to cross the track, and one of
them was immediately struck and killed. Whether the um-
brellas and the rain really interfered with their vision and
caused the survivor to say he did not see the train, it is an ab-
solute certainty that they attempted to cross the track immedi-
ately in front of an approaching locomotive, and the fatal result
necessarily and instantly followed.

The undisputed facts, fully shown by the plaintiff's testi-
mony, bring the case directly within the ruling of several of
our decisions. In Carroll v. Railroad Co., 12 W. N. 348 (2
Penny. 159), the plaintiff testified more precisely and much
more fully to his looking in different directions, and listening
for approaching trains, and seeing and hearing none, he stepped
upon the track, and was struck. Nevertheless we said: "The
injury received by the plaintiff was attributable solely to his
own gross carelessness. It is in vain for a man to say that he
looked and listened, if, in despite of what his eyes and ears
must have told him, he walks directly in front of a moving lo-
comotive." We have applied the same doctrine in the cases
of Moore v. Railroad Co., 108 Pa. 349; Penna. R. Co. v. Bell,

Statement of Facts.

122 Pa. 58; and Marland v. Railroad Co., 123 Pa. 487.　They are conclusive of the present case.

Judgment affirmed.