## Groner *v.* Delaware & Hudson Canal Co., Appellant.

[Marked to be reported.]

*Negligence—Grade crossing—Stop, look and listen.*

In an action to recover damages for personal injuries caused by collision with a train at a grade crossing, it appeared that plaintiff and her husband were driving along a highway, and that at a point in the middle of a bridge one hundred and thirty feet from the crossing, they stopped, looked and listened, and then drove on and were run into by a train backing from the south. The train consisted of a number of cars, and was about one hundred and sixty feet long. In the southeast corner made by the intersection of the highway and the railroad was an engine house extending in length along the railroad fifty-eight feet, and along the highway twenty feet. From fifty to seventy feet south of the engine house on the east side of the railroad some works began called " high works," which some of the witnesses testified obstructed the view of the track from the middle of the bridge. Both plaintiff and her husband testified that when they stopped they saw no cars. Plaintiff's husband testified that between the engine house and the high works he could see down the track for about sixty rods. Defendant's witnesses denied this. From the middle of the bridge, the engine house partly obstructed the view of the track for about seventy-four feet. There was evidence that no signal was given as the train backed to the crossing. *Held*, that the case was a proper one to submit to the jury,

Argued Feb. 21, 1893. Appeal, No. 14, Jan. T., 1893, by defendants, from judgment of C. P. Wayne Co., May T., 1891, No. 119, on verdict for plaintiff, Mary Groner. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass for personal injuries.

At the trial, before SEELY, P. J., it appeared that, on July 5, 1889, plaintiff and her husband were driving in an open market wagon along a public road, and that at a point in the middle of a bridge over a canal at a distance of about one hundred and thirty feet from defendant's railroad, they stopped, looked and listened, and then drove on and their wagon was run into by a train of empty coal cars backing from the south. The train consisted of from ten to fourteen cars and was one hundred and sixty feet long. In the southeast corner, made by the intersection of the public road and the railroad, was an engine house extending in length along the railroad fifty-eight

feet, and along the public road twenty feet. To the south of the engine house from fifty to seventy feet were some works called "high works," which some of the witnesses testified obstructed the view of the track from the middle of the bridge. Plaintiff's husband testified that between the engine house and the high works he could see down the track for about sixty rods. Defendant's witnesses denied this. From the middle of the bridge the engine house partly obstructed the view of the track for about seventy-four feet. Both plaintiff and her husband testified that when they stopped they saw no cars. There was evidence that no signal was given as the train backed to the crossing. The head of plaintiff's horse was just over the nearest rail when the train came up the track. The horse threw back his head, turned in the direction in which the cars were going, ran around the end of the train, crossing the track ahead of it, and bringing the wagon and its occupants across the track uninjured by the cars. The train stopped on the crossing, the first two cars extending beyond it. The horse, having become frightened, ran away, and plaintiff was thrown out and injured.

Defendant's points were among others as follows :

"19. It having been shown by abundant and undisputed testimony on the part of both plaintiff and defendant that the train which approached the crossing at the time of the accident was made up of from ten to fourteen cars, the total length of which, together with the engine and tender attached, was not less than one hundred and sixty feet, and it having been shown by undisputed testimony that from the middle of the bridge, where plaintiff claims to have looked, the engine house obstructed only seventy-four feet of the track from view, it was therefore a physical impossibility for plaintiff not to have seen the approaching train if she had looked properly. That, under those circumstances, she requested her husband to drive on, and attempted to cross the tracks, was contributory negligence on her part, and she cannot recover. *Answer :* This comes down to a very close question in this case, and one to which we have given careful attention, and we are impressed with the belief that it still remains a question for the jury. The case is not so free from doubt that the court can affirm the proposition of the defendant in this case. Perhaps if we had

evidence that was precise as to the exact time when that train started we might be able to rule upon this question as a question of law. But we are not so satisfied from our recollection of the evidence that we can say to you as a matter of law that she was negligent in not having seen the approaching train under the circumstances." [1]

" 20. If, as is shown by undisputed testimony, it was a physical impossibility for the engine house to have shut out the view of the entire train at any time during its approach to the crossing, from a person anywhere on the bridge, the plaintiff and her husband are guilty of contributory negligence in driving to the crossing as they did, and she cannot recover. *Answer :* If this means to ask us to say as matter of law that it was such a physical impossibility, we cannot affirm it. If it means, and so we understand it to mean, that if you find that it was a physical impossibility for her not to see this train moving if she looked, we think the point is well taken. As we read the point, we think it asks us to say that it is shown by the undisputed testimony that it was a physical impossibility, and we decline to say that. That is a matter for you and not for the court." [2]

" 23. It is in vain for the plaintiff to say that she looked and listened for approaching trains, if, as a matter of fact, a train was approaching which she might have seen or heard, and if, in spite of what her eyes and ears must have told her, if she had used them properly, she drove directly on to the crossing. Such conduct was contributory negligence, and she cannot recover. *Answer :* This, again, asks us to take this case away from you and settle all these questions. That is the trouble with many of these points. While there is much in them that we would affirm, they end by asking us to say that the plaintiff cannot recover, and we think there are some things in this case that are not so clear that the court can decide them as a matter of law. If the plaintiff stopped and looked and listened at the point where she says she did, did she see the train ? If she saw that train moving towards the crossing, she had no right to proceed towards that crossing, and if she did so proceed, seeing the train when she stopped and looked and listened, she could not recover, because it was negligence on her part." [3]

" 28. Under all the evidence in this case the verdict of the jury must be for the defendant. *Answer:* We decline to say that. We think you must determine that yourselves." [4]

Verdict and judgment for plaintiff for $700. Defendant appealed.

*Errors assigned* were (1–4) instructions, quoting points and answers as above.

*Homer Greene,* for appellants.—Plaintiff's husband says that from the middle of the bridge he could see down the track below the engine house for a distance of about 60 rods—1000 feet. Plaintiff says she kept looking up and down the track all the way from the middle of the bridge until they reached the end of the bridge, from which point on to the crossing the the engine house obscured her view. There is no allegation that she could not see as far down the track at any point between the middle and west end of the bridge as she could at the middle; no allegation that her view of the track was in any way obscured until it was obscured by the engine house after she left the west end of the bridge. The track must have been practically straight, as was afterward shown by defendant's maps and evidence, or plaintiff's husband could not have seen down it for a distance of a thousand feet while at a point only one hundred and fifteen feet from the crossing. Certainly plaintiff must have been able, under these circumstances, to see down the track to approximately the same distance while she was passing through the sixty-five feet from the middle to the west end of the bridge. If no cars were in sight when she looked down the track from the west end of the bridge, then while she was passing through the remaining fifty feet to the crossing the train must have come up through the 1000 feet of track below the engine house and the eighty-six feet of track obscured by the engine house in order to meet them at the crossing. Suppose the horse walked at the slowest supposable gait, three miles an hour. Calling it an even thousand feet through which the train had to pass, it must have moved twenty times as fast as the horse, that is at the rate of 60 miles an hour. Now consider that this locomotive was pushing a train of empty coal cars ahead of it; that when it reached the crossing the train was going so slowly that plaintiff's horse

was able to run alongside of it for a few feet, outrun it and cross the track ahead of it, taking the wagon and occupants with him, and that the train stopped on the crossing with only two cars the other side of the crossing, and it is at once seen to be a flat absurdity to suppose that this train came up at the rate of a mile a minute.

It is vain for a man to say that he looked and listened if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive : Carroll v. R. R., 12 W. N. 348; Moore v. P. W. & B. R. R., 108 Pa. 349; P. R. R. v. Bell, 122 Pa. 58 ; Maryland v. P. & L. E. R. R., 123 Pa. 487 ; Warner v. People's St. Ry., 141 Pa. 615; Blight v. R. R., 143 Pa. 13; Hauser v. Central R. R. of N. J., 29 W. N. 471; Myers v. B. & O. R. R., 150 Pa. 386.

*Charles A. McCarty*, for appellee.—Whether, taking into consideration all the circumstances in the case, plaintiff stopped in the proper place to listen and look, is a question to be determined by the jury : Neiman v. Delaware & Hudson Canal Co., 1 Adv. R. 758 ; [149 Pa. 92].

No such case is presented here as comes within the ruling of the cases cited by appellant to sustain his position. All the cases referred to by appellant are cases where a person stepped directly in front of a moving locomotive. In all cases the track was clear of obstructions, and a clear view of the approaching train could be had.

In Carroll v. Pa. R. R., 12 W. N. 348, plaintiff was struck by a locomotive that was plainly visible to him if he had looked, plaintiff himself testifying, "I could have seen the engine if I had looked for it." In Moore v. P. W. & B. R. R., 108 Pa. 349, plaintiff stood between two railroad tracks. There was a clear view of the track for half a mile in the direction from which the engine came. Plaintiff testified, "I got hurt by standing too near the track, I guess." In Bell v. Pa. R. R., 122 Pa. 58, Bell was intoxicated and deliberately walked into an obvious danger in plain view of a moving locomotive. In Marland v. P. & L. E. R. R., 123 Pa. 487, plaintiff stepped upon the track and was instantly struck and injured, though there was no obstruction to his view. In Mooney v. Pa. R. R., 126 Pa. 244, Mooney was walking along the track, in front of

a moving engine, or stepped in front of the engine, in plain sight, and was instantly killed. In Warner v. Peoples' St. Ry., 141 Pa. 615, the street was undoubtedly in plain sight of plaintiff when she entered the cut, a place of extreme danger. Blight v. Camden C. R. R., 143 Pa. 13, is another instance where a person stepped upon a railroad track and was instantly killed. In Hauser v. Central R. R., 29 W. N. 471, plaintiff was attempting to cross the track while the train was passing, but was obstructed by the cars on the track and injured.

In the case at bar, the view of the track was obstructed from plaintiff's view at least 85 feet immediately south of the crossing, the direction from which the engine came, and then again from 50 to 70 feet further down it was again obstructed. Indeed there is no definite evidence that the track was entirely unobstructed at any point from the view of a person on the bridge. There is no evidence that the track was straight. The case comes within the ruling of another line of cases, in which this principle is held : when material facts are disputed, or even in doubt, or inferences of facts are to be drawn from the testimony, it is the exclusive province of the jury to determine what the facts are : Fisher v. R. R., 131 Pa. 292 ; Pa. R. R. v. Weber, 76 Pa. 157 ; Lehigh Valley R. R. v. Brandtmaier, 113 Pa. 610 ; Pa. R. R. v. Barnett, 59 Pa. 259 ; Pa. R. R. v. Ogier, 35 Pa. 60 ; Pa. R. R. v. Coon, 111 Pa. 430 ; Kohler v. R. R., 135 Pa. 346.

OPINION BY MR. CHIEF JUSTICE STERRETT, March 6, 1893 :

If the jury's attention was not called to all the questions of law involved in this case, it was not the fault of learned counsel on either side. It appears that forty-two points for charge —fourteen by plaintiff and twice that number by defendant— were presented and fully answered by the learned president of the court. In the main, his answers appear to have been satisfactory to both parties, for the only subjects of complaint here are his refusal to affirm defendant's nineteenth, twentieth, twenty-third and twenty-eighth points, respectively, as presented. In the latter he was requested to charge: "Under all the evidence in this case the verdict of the jury must be for the defendant." This he very properly refused to do, for the very good reason that the evidence tended strongly to

show that defendant's negligence caused the injury complained of, and there was no admitted or undisputed fact or facts in the case that would have justified him in declaring, as matter of law, that plaintiff was guilty of any negligence that contributed to her injury. An examination of the somewhat voluminous testimony shows that defendant's liability depended on questions of fact which were clearly for the consideration and determination of the jury. These questions were fairly submitted to them in a very clear and comprehensive charge, which appears to be free from error.

For reasons above suggested, there was no error in the learned judge's answers to either of the points recited in the first three specifications, in which he was substantially requested to say that, under certain facts and circumstances therein stated, the plaintiff was guilty of contributory negligence and could not recover. The facts and circumstances, of which these points are respectively predicated, were neither admitted nor established by undisputed evidence, and hence it would have been manifest error to have affirmed them without qualification.

Referring to the twentieth point, the learned judge said, in substance: If this means to ask us to say, as matter of law, that it was physically impossible for plaintiff not to have seen the train approaching the crossing, we cannot affirm it. " If it means,—and we so understand it to mean,—that if you find that it was a physical impossibility for her not to see this train moving, if she looked, we think the point is well taken. As we read the point, we think it asks us to say that it is shown by the undisputed testimony that it was a physical impossibility, and we decline to say that. That is a matter for you and not for the court." This was clearly correct.

There is nothing in the undisputed facts of this case, as they appear from the testimony, to bring it within the principle of Carroll v. Railroad Co., 2 Penny. 159, and that line of cases.

Neither of the specifications of error is sustained.

Judgment affirmed.